# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KRISTI CHANLEY, Special Administrator of the Estate of TERRY CHANLEY <br><br> Plaintiff <br><br> v. <br><br> CITY OF EVANSVILLE, INDIANA; <br> MARIO REID, in his individual capacity and as an Evansville police officer; <br> CODY SMITH, in his individual capacity and as an Evansville police officer; <br> RYAN EAGLESON, in his individual capacity and as an Evansville police officer; <br> COREY NUTT, in his individual capacity and as an Evansville police officer; <br> WILLIAM T. GEORGE, in his individual capacity and as an Evansville police officer; <br> MATTHEW HENRICH, in his individual capacity and as an Evansville police officer; <br> BEN BRASHER, in his individual capacity and as an Evansville police officer; <br> PAUL KLEIN, in his individual capacity and as an Evansville police officer; <br> CHRISTOPHER SEIBERT, in his individual capacity and as an Evansville police officer; <br> PATRICK MCDONALD, in his individual capacity and as an Evansville police officer; <br> RAY ANTHONY SMITH, JR. in his individual capacity and as an Evansville police officer; <br> KYLE THIRY in his individual capacity and as an Evansville police officer; <br> GARRETT VANFLEET in his individual capacity and as an Evansville police officer; <br> TRENDON AMUZIE in his individual capacity and as an Evansville police officer; and <br> DAVID BROWN, in his individual capacity and as an Evansville police officer <br><br> Defendants | Civil Action No. 3:21-cv-155 <br><br> *Jury Trial Demanded Under Fed. R. Civ. P. 38(b)* |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

For her Complaint, Plaintiff, by and through her attorneys, states and alleges as follows:

## INTRODUCTION

1. This Complaint arises out of the personal injury and wrongful death of Terry Chanley ("Terry"). On October 28, 2019, Terry was shot multiple times by Mario Reid ("Reid"), an officer of the Evansville Police Department ("EPD"). Reid and other EPD officers at the scene failed to provide or allow medical aid to Terry for approximately 20 minutes. As a result, Terry died from the gunshot wounds.

## JURISDICTION

2. The Court has subject matter jurisdiction of this case under 28 U.S.C. §1331 (federal question jurisdiction) because Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988(a) to vindicate rights guaranteed by the Constitution, statutes, and common law of the United States of America. The Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

## VENUE

3. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside and the events giving rise to the Plaintiff's claims took place in this judicial district.

## PARTIES

4. At the time of his death, Terry was a 45-year-old person who lived in Wadesville, Indiana. Terry was survived by his wife, Kristi Chanley, and their dependent children, Max Logan (DOB 8/22/99) and Tessa Marie (DOB 7/30/02).

5. On April 17, 2020, a petition for the appointment of a special administrator was filed in the Posey County Circuit Court, Cause Number 65C01-2004-EM-00016 (the "Estate"). On April 20, 2020, Kristi Chanley was appointed Special Administrator of the Estate and authorized to take

all actions necessary for the purpose of collecting damages for the personal injury and wrongful death of Terry Chanley with all authority granted to a personal representative under Indiana law. As special administrator of the Estate, Kristi Chanley has the authority to commence and maintain this lawsuit.

6. The City of Evansville, Indiana (the "City") operates, manages, directs, and controls the EPD.

7. On October 28, 2019, the City employed Reid, Cody Smith ("Smith"), Ryan Eagleson ("Eagleson"), Corey Nutt ("Nutt"), William T. George ("George"), Matthew Henrich ("Henrich"), Ben Brasher ("Brasher"), Paul Klein ("Klein"), Christopher Seibert ("Seibert"), Patrick McDonald ("McDonald"), Ray Anthony Smith, Jr., ("Smith, Jr."), Kyle Thiry ("Thiry"), Garrett Vanfleet ("Vanfleet"), Trendon Amuzie ("Amuzie"), and David Brown ("Brown").  Reid, Smith, Eagleson, Nutt, George, Henrich, Brasher, Klein, Seibert, McDonald, Smith, Jr., Thiry, Vanfleet, Amuzie, and Brown are sometimes referred to as the "Officers."

8. The Officers were at all times relevant to this complaint employed as police officers by the City. In all instances described in this complaint, the Officers acted within the scope of their employment.

## NOTICE OF TORT CLAIM

9. On April 21, 2020, a Notice of Tort Claim (the "Notice") was served on the City according to the requirements of IC 34-13-3-8.

## FACTUAL ALLEGATIONS

10. On October 28, 2019, at approximately 6:28 PM there was a 911 call for a motor vehicle accident with injuries near the intersection of E. Morgan Avenue and Theater Drive in Evansville, Indiana.

11. Emergency medical services were dispatched to the scene at approximately 6:30 PM.

12. Reid arrived at the scene at approximately 6:30:44 PM. Reid was the first officer to arrive.

13. When Reid arrived, Terry's vehicle was off the road and had struck a utility pole.

14. Reid exited his vehicle and walked toward Terry's vehicle.

15. Terry was sitting in the driver's seat and the impact of the crash had caused the driver's side airbag to deploy.

16. Reid spoke with Terry for approximately 30 seconds. Reid asked Terry to show his hands. Terry complied. Reid asked Terry to exit the vehicle. Terry complied.

17. A few seconds later, Reid shot Terry twice. A few seconds later, Reid shot him again. A few seconds later, Reid shot Terry a fourth time and Terry fell to the ground.

18. At approximately 18:32 PM, Reid reports that shots were fired.

19. EPD Operational Guideline OG 359.01 provides that an officer may use deadly force, "When necessary in the defense of an officer's own life or to prevent serious bodily injury to himself when he reasonably believes that he has used all other reasonable means at his disposal to stop the subject, or when no other reasonable means can likely succeed."

20. OG 359.01 defines reasonable belief as a "[b]elief that is so conclusive that all reasonable doubt is removed from one's mind."

21. Reid did not have a reasonable belief that Terry posed a threat to Reid's life or safety.

22. Terry did nothing to justify Reid's use of deadly force. Terry complied with all of Reid's directions, including showing his hands and exiting the vehicle immediately upon being requested to do so by Reid.

23. Reid's use of deadly force was not justified under the law or circumstances and caused Terry fear, emotional distress, extreme pain and suffering, unconsciousness, and death. Terry complied with Reid's instructions and Terry's actions were at all times reasonable responses to Reid's requests.

24. According to post-mortem toxicology reports, Terry was not intoxicated or under the influence of drugs or alcohol at the time of his death.

25. 4 shots were fired but only 2 shots struck Terry, one in the hand and the other in his liver.

26. The shot to Terry's hand caused a large superficial wound that did not contribute to his death.

27. The shot to Terry's liver perforated the left hepatic lobe causing a massive and deadly loss of blood.

28. The cause of Terry's death was loss of blood from a perforation of the liver caused by a gunshot wound.

29. Most gunshot liver injuries can be managed by simple surgical techniques. In complex injuries control of major hemorrhage is vital and may be lifesaving.

30. After being shot, Terry fell to the ground. Contrary to public reports at the time, including Terry's death certificate, Terry survived the gunshots.

31. OG 359.01provides that, "If the subject of the force is in need of medical aid, officers will ensure that the subject receives it as soon as it is safe to do so. When appropriate, the subject of the force will be taken to a medical facility for emergency treatment. All officers, as part of their authorization to carry weapons, will be issued a copy of and be instructed regarding this guideline."

32. Terry was breathing for a while but then stopped. Terry's eyes were opened at first but then closed. His left arm was behind his back. His right arm was in front of his body and his hand was tucked under his body. Terry was motionless throughout the ordeal. Terry's body was well lit by the headlights of numerous police cars.

33. For approximately 20 minutes, officers at the scene, including the Officers, saw Terry lying on the ground, motionless, bleeding, and faintly breathing. The Officers saw him close his eyes and then stop breathing. For approximately 20 minutes, the Officers watched Terry and shouted at him. Terry did not move or respond.

34. The Officers knew that Terry had been shot. The Officers knew that Terry did not pose a threat to anyone.

35. None of the officers at the scene, including the Officers, approached Terry to determine his medical condition. Instead, the Officers pointed their guns at Terry and shouted at him for approximately 20 minutes. For approximately 20 minutes, the Officers stood by, some with guns drawn and pointed at Terry, shouting at him. Terry did not respond or move but the Officers kept shouting and pointing their guns.

36. After approximately 18 minutes of shouting without a response from Terry, officers of the EPD set off a flashbang in an apparent attempt to get a response from Terry. When Terry did not respond, EPD TACMED officers were allowed to approach Terry and determined that he was dead.

37. The officers at the scene, including the Officers, failed to provide and/or refused to allow any medical aid for Terry until after he had stopped breathing and died.

38. Notwithstanding the severity of his injuries, the officers at the scene, including the Officers, let Terry lie on the ground bleeding without any medical aid for approximately 20 minutes.

39. Emergency medical services were on the scene within immediately after the shots were fired. The officers at the scene, including the Officers, did not allow emergency medical services to provide medical aid to Terry for approximately 20 minutes.

40. After being shot, the Officers had a duty to provide immediate medical aid and request emergency medical assistance for Terry. Instead, the Officers left Terry on the ground bleeding until he died.

41. Terry presented no safety risk to the officers at the scene, including the Officers, as he lay dying in the street.

42. The Officers did not have a reasonable belief that Terry posed a safety threat as he lay dying in the street.

43. The Officers had a duty to provide medical aid to Terry but failed to provide or allow others to provide medical aid for Terry.

44. McDonald and Brown were also acting in a supervisory capacity and directly participated in denying Terry's right to have medical aid. McDonald and Brown are, therefore, liable in both their individual and supervisory capacities.

45. Upon examination by emergency medical professionals approximately 20 minutes after Reid shot Terry, Terry was pronounced dead at the scene at 6:53 PM approximately 21 minutes after the shots were fired.

46. No life-saving measures were provided to Terry.

47. The cause of Terry's death was the loss of blood from the gunshot wound to his liver.

48. The Officers breached the standard of care and generally accepted police training and practices during their contact with Terry, including but not limited to the following:

    a.    Reid did not have a reasonable belief , reasonable suspicion, or probable cause to justify using deadly force against Terry.

    b.    The Officers failed to recognize that Terry required immediate medical aid and emergency medical assistance.

    c.    The City failed to thoroughly investigate the Officers' conduct and the totality of circumstances that led to Terry's death and failed to hold the Officers accountable for, among other issues, use of excessive force, failure to intervene, failure to recognize that Terry was suffering from a medical emergency requiring immediate police intervention, and failure to immediately provide medical aid and emergency medical services for Terry.

    d.    The City failed to train their officers and/or have sufficient policies on the use of force, medical aid, and providing/summoning emergency medical services to prevent the deaths of persons who have been injured by or are in the custody of their officers.

    e.    But for the aforementioned conduct of the Officers, Terry would not have suffered injuries and lost his life.

49.    The Defendants are not entitled to qualified immunity as the Officers' conduct violated a constitutional right clearly established at the time of the incident.

50.    The City failed to properly train the Officers, adopted unconstitutional policies and procedures for how its officers interact with the public and subdue individuals, and sanctioned unlawful and unconstitutional practices of its officers contrary to law and its own published policies and procedures.

51.    The Officers were, or should have been, trained by the City to have knowledge of the symptoms and effects of injuries caused by gunshot wounds, how a law enforcement officer should

appropriately and timely respond to such injuries, and how the failure to immediately treat such injuries can cause death.

52. At all pertinent times, the Officers were employed by the City and acting under color of state law and in the course and scope of their employment with the City. The City is responsible for the wrongful acts that they committed within the scope of their employment pursuant to respondeat superior. To the extent that the City claims that the Officers' actions are criminal, clearly outside the scope of their employment, malicious, or willful and wanton, Plaintiff is suing the Officers in their individual capacity.

53. Terry's death was without legal justification and objectively unreasonable under the totality of the circumstances. Pursuant to 42 U.S.C.A. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, the Defendants owed Terry a duty to act prudently and with reasonable care and to otherwise avoid the use of unnecessary, unreasonable, excessive, and/or deadly force. The Defendants violated Terry's right to be free from punishment and deprivation of life and liberty without due process of law and to be free from deliberate indifference to all of those rights by unjustifiably allowing him to die without providing immediate medical aid.

54. After employing unnecessary, unreasonable, excessive, and deadly force resulting in injury to Terry, the Defendants failed to timely render and/or seek medical aid or assistance for Terry.

55. The Defendants also conspired to fabricate and disseminate false accounts regarding the use of deadly force against Terry. The Defendants knowingly, falsely, and publicly stated that the Officers and others were in a dangerous situation and/or were justified in using the type of force they did. Statements made by the Defendants in the record and/or publicly that represented Terry to be at fault for his own death were voiced and announced prior to completion of a complete and objective

investigation. A complete and objective investigation of the Defendants' actions has never been done.

56. At all times relevant, the City, through the EPD and its officers, policymakers, and supervisors, pursued policies, practices, and customs that were a direct and proximate cause of the unlawful and unconstitutional acts alleged here and were the result of deliberate indifference. The policies include, but are not limited to:

    a. Failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers, including the Officers, who are known or should have been known to engage in improper use of excessive and deadly force;

    b. Employing a police code of silence where officers and supervisors cover up the use of excessive force by fabricating accounts in police reports, internal affairs investigations, and statements to the media, all of which are designed to falsely exonerate officers and protect the City from potential civil liability;

    c. Creating and implementing procedures that allow for and promote the use of excessive force in unwarranted and under unjustified circumstances;

    d. Failing to adequately investigate in-custody civilian deaths and failing to discipline officers involved;

    e. Failing to properly use, maintain, and monitor police body and dashboard video and audio recording equipment;

    f. Failing to properly train its offices regarding the necessity to provide immediate medical assistance to persons with gunshot injuries; and

    g. Other failures yet to be discovered.

57. At all times relevant, the individual Defendants were acting and/or interacting with Terry within the scope of their employment as employees and/or agents of the City. At all times relevant, as a result of the Indiana Constitution and/or statutes and/or common law and/or the special relationship that existed between Terry and the Defendants, Defendants had a duty to provide adequate medical aid and/or treatment to Terry and to act with ordinary care for his safety.

58. Defendants breached their duty and acted with recklessness, willfulness, and wantonness and with deliberate indifference as to whether harm would result. The acts and/or omissions and/or conduct of the Defendants as alleged constitute gross negligence.

59. As a direct and proximate result of the Defendants' actions, omissions, and deliberate indifference, Terry suffered severe physical pain, injury, emotional distress, mental anguish, untimely and wrongful death, and other damages and injuries resulting in his death.

60. But for the aforementioned conduct of the Defendants, Terry would not have suffered severe pain and suffering or lost his life.

## COUNT I

## VIOLATION OF FOURTH AMENDMENT RIGHTS, 42 U.S.C. § 1983

61. Plaintiff adopts and incorporates by reference paragraphs 1 through 60 above as if fully set forth herein.

62. The conduct by the Officers constituted excessive and deadly force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and clearly established law.

63. It was a violation of Terry's Fourth Amendment rights for the Officers to fail to render medical aid to Terry once he became unresponsive.

64. The Officers were each acting under color of state law, as agents of the EPD and the City, and within the scope of their employment and authority as duly certified law enforcement officers of the City.

65. At all material times, the Officers had no reason to believe that Terry was armed or dangerous.

66. At all material times, the Officers did not have a reasonable fear of imminent bodily harm nor a reasonable belief that any other person was in danger of imminent bodily harm from Terry.

68. Every reasonable law enforcement officer would have known that using excessive force against a person who had committed no crime, was not armed, nor a danger to himself or others is a violation of every citizen's rights under the Fourth and Fourteenth Amendments.

69. The Officers' conduct was objectively unreasonable and violated clearly established law.

70. As a result of the Officers' conduct, Terry experienced conscious pain and suffering.

71. As a result of the Officers' conduct Terry died.

72. As a direct and proximate result of the acts and omissions described herein, Plaintiff is entitled to damages in an amount to be determined by jury.

73. Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

74. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II

## MONELL LIABILITY, 42 U.S.C. § 1983

75. Plaintiff incorporates by reference paragraphs 1 through 74 above as if fully set forth herein.

76. The City is vested with all the powers connected with and incident to the establishment, maintenance, appointment, removal, discipline, control, and supervision of its police force.

77. The City has final policymaking authority with regard to establishing written policies and training programs governing the conduct of EPD officers performing policing functions on behalf of the City.

78. The City established and/or approved EPD's written policies and training governing the conduct of EPD officers performing policing functions.

79. The written policies and training established and/or approved by the City constitute the official policy of the City and were the moving force behind and caused Terry's injuries.

80. The City had knowledge of EPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

81. The City made a deliberate and/or conscious decision to disregard the known risk of harm that would result from EPD's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

82. On or prior to October 28, 2019, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

83. On or prior to October 28, 2019, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by EPD officers.

84. On or prior to October 28, 2019, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

85. By refusing to adopt and enforce policies that deter the use of excessive force and provide for meaningful investigations of complaints of excessive force, the City created an environment that allowed the Officers to believe that they could act with impunity and without fear of retribution.

86. In this case, the EPD conducted its own investigation of the excessive force and wrongful death, no outside agency was involved in the investigation, and to the best knowledge of the Plaintiff, the Officers were not disciplined. The failure to properly investigate such claims is part of a larger custom, policy, or practice of failing to supervise, terminate, or properly discipline the City's officers for unconstitutional, unlawful, or otherwise improper conduct, thereby encouraging other officers to continue to engage in unlawful acts towards the public.

87. On or prior to October 28, 2019, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, participated in contract negotiations with the union for police officers that among other things, allows police officers to have up to three (3) days before they are required to make statements to investigators, during which time the officers are allowed to speak with legal counsel and prepare written statements of the circumstances of the investigation, and allow the officer being investigated to refer to his or her written statements during the investigative interview.

88. As a direct and proximate result of the acts and omissions described herein, Plaintiff is entitled to recover damages in an amount to be determined by a jury.

89. Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

90. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III

## CANTON LIABILITY, 42 U.S.C. § 1983

91. Plaintiff incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

92. The City failed to properly train or modify its training to its officers, including but not limited to, matters related to the reasonable and appropriate use of force during investigations, detentions, and arrests, and intervention in the excessive use of force by fellow officers.

93. The use of force is a usual and recurring situation with which the City's law enforcement officers and other agents encounter on a regular basis.

94. With deliberate indifference to the rights of citizens, the City failed to provide adequate training to its officers on the use of force, resulting in the personal injury to and death of Terry.

95. The City was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

96. As such, the City was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

97. The failure to train and/or to appropriately modify training constituted official policies, practices, or customs.

98. The City's failure to train and/or to modify its training was a proximate cause of the acts and omissions the Officers made toward Terry.

99. As a direct and proximate result of the acts and omissions described herein, Plaintiff is entitled to damages in an amount to be determined by jury

100. .Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

101. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT IV
## COMMON LAW NEGLIGENCE

102. Plaintiff incorporates by reference paragraphs 1 through 101 as if fully set forth herein.

103. At all times relevant to this case, the Officers acted within the scope of their duties as employees of the EPD and the City, and the City is legally responsible for their actions.

104. The Officers owed Terry a duty to exercise reasonable care.

105. The Officers breached their duty of care to Terry.

106. The Officers' breach of duty was not excused by law.

107. As a proximate cause of the Officers' acts and omissions, Terry sustained serious bodily injury and endured great pain, suffering, mental anguish, and emotional distress from the time the Officers arrived on the scene until his death.

## COUNT V

### COMMON LAW NEGLIGENCE IN SUPERVISING AND RETAINING

108. Plaintiff incorporates by reference paragraphs 1 through 107 as if fully set forth herein.

109. At all times relevant to this case, the Officers acted within the scope of their duties as employees of the EPD and the City.

110. The City had a duty to properly hire, train, supervise, discipline, and—where necessary— terminate its personnel in order to protect the public against dangers reasonably likely to result from the absence of proper hiring, supervision, and firing.

111. The City breached its duties to the public—including Terry—by failing to adequately hire, supervise, control, discipline, or terminate its officers, including the Officers.

112. Defendants' breach of these duties directly and proximately caused Terry's injuries and death.

## COUNT VI

### COMMON LAW NEGLIGENCE IN TRAINING

113. Plaintiff incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

114. At all times relevant to this case, the Officers and each of them acted within the scope of their duties as employees of the EPD and the City.

115. Upon information and belief, the Officers participated in standard job training given by the EPD and each of the Officers was subject to all laws, regulations, and rules governing the conduct of officers employed by the City.

116. The City had a duty to use reasonable care in training EPD officers, including but not limited to training, education, evaluation, and corrective action against officers in line with governing federal and local laws and regulations.

117. The City knew or should have known that its officers commonly used excessive force when interacting with the public, but the City failed to adequately train, educate, evaluate, and take corrective action against its officers, thereby breaching the City's duty.

118. The City further breached its duty of care to Terry by failing to use reasonable care in providing training consistent with local and national standards.

119. Defendants' breach of these duties directly and proximately caused Terry's injuries and ultimate death.

## COUNT VII

## RESPONDEAT SUPERIOR

120. Plaintiff adopts and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

121. The City is liable for all common law torts its employees commit in the scope of their employment under the doctrine of respondeat superior.

122. At all times discussed in and relevant to this complaint, the Officers were employees of EPD and the City.

123. At all times discussed in and relevant to this complaint, the Officers acted within the scope of their employment by EPD and the City.

124. Where any Defendant Officer is found liable to the Plaintiff, the City is also liable to the Plaintiff under the doctrine of respondeat superior for those damages.

## COUNT VIII

## WRONGFUL DEATH

125. Plaintiff incorporates by reference paragraphs 1 through 124 above as if fully set forth herein.

126. Plaintiff brings this claim for wrongful death pursuant to Ind. Code 34-23-1-2.

127. Plaintiff's claims for common law negligence and assault and battery are actionable under the Indiana wrongful death statute.

128. Terry was wrongfully injured and killed by the Officers.

129. The Officers breached their duty to immediately provide life savings measures for Terry once he became unresponsive.

130. As a direct result of the wrongful acts committed by the Officers and the City, the Estate is entitled to recover damages pursuant to Ind. Code 34-23-1-1 et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A. A money judgment against the Defendants for compensatory, special, and punitive damages, together with costs and disbursements, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

B. A money judgment against the Defendants for damages recoverable under IC 34-23-1-1 et seq.

C. For the appointment of a receiver or similar authority to ensure that the City properly trains and supervises its law enforcement officers.

D. For such other and further relief as this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL.**

        Respectfully submitted,

Date: October 22, 2021

/s/Mark E. Miller
Mark E. Miller
Attorney No. 10458-82
Mark Miller Law Office
915 Main Street – Suite 203
P.O. Box 3009
Evansville, IN  47730
mmiller@indianalawonline.com
Phone: (812) 303-3444

/s/ Michael C. Keating
Michael C. Keating
Attorney No. 5100-82
Law Offices of Steven K. Deig, LLC
5615 E. Virginia Street
Evansville, IN 47715
michael@deiglaw.com
Telephone: (812) 477-5577
Fax: (812) 477-7220

Attorneys for Plaintiff