UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KRISTI CHANLEY Special Administrator of the Estate of Terry Chanley, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   No. 3:21-cv-00155-JPH-MPB ) |
| CITY OF EVANSVILLE INDIANA, MARIO REID, CODY SMITH, RYAN EAGLESON, COREY NUTT, WILLIAM T. GEORGE, MATTHEW HENRICH, BEN BRASHER, PAUL KLEIN, CHRISTOPHER SEIBERT, PATRICK MCDONALD, RAY ANTHONY SMITH, JR., KYLE THIRY, GARRETT VANFLEET, TRENDON AMUZIE, DAVID BROWN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Terry Chanley died after being shot by an Officer from the Evansville Police Department. Kristi Chanley, as special administrator of Mr. Chanley's estate, sued the City of Evansville and fifteen police officers. Defendants have filed a motion for partial judgment on the pleadings. Dkt. [55]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

1

# I.
# Facts and Background

Because Defendants have moved for judgment on the pleadings under Rule 12(c), the Court accepts and recites the well-pleaded facts in the complaint as true. *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (applying the 12(b)(6) standard to a motion made under 12(c)).

In the late afternoon on October 28, 2019, Terry Chanley's vehicle ran off the road in Evansville, Indiana, and struck a utility pole. Dkt. 1 at 4. Officer Mario Reid from the Evansville Police Department was the first responder. *Id.* at 1, 4. Mr. Chanley and Officer Reid spoke for about 30 seconds before Officer Reid asked Mr. Chanley to show his hands and get out of the vehicle. *Id.* at 4. Mr. Chanley complied. *Id.* A few seconds later, Officer Reid shot at Mr. Chanley twice; after a few more seconds, he shot at him a third time; and after a few more seconds, a fourth time. *Id.* Mr. Chanley fell to the ground, hit by two shots—one in the hand and one in the liver. *Id.* at 4–5.

For about twenty minutes afterward, Officer Reid and other responding officers watched Mr. Chanley "lying on the ground, motionless, bleeding, and faintly breathing." *Id.* at 6. They "saw him close his eyes and then stop breathing." *Id.* During that time, officers shouted at Mr. Chanley and pointed their guns at him, but he did not respond. *Id.* They provided no medical assistance until the end of the twenty minutes, when they approached Mr. Chanley "and determined that he was dead." *Id.*

In October 2021, Kristi Chanley—as special administrator of Mr. Chanley's estate—brought this action against the City of Evansville and fifteen Evansville Police Department officers ("Officers"), including Officer Reid, alleging Fourth Amendment violations, *Monell* liability against the city, and state-law claims. Dkt. 1. Defendants have moved for partial judgment on the pleadings. Dkt. 55.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings after the parties have filed a complaint and answer. A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Gill*, 850 F.3d at 339. To survive a motion for judgment on the pleadings, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a Rule 12(c) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

# III.
# Analysis

## A. Qualified Immunity on Failure to Provide Medical Care

Count 1 of the complaint alleges that the Officers violated the Fourth Amendment by failing to provide medical care to Mr. Chanley once he became unresponsive. Dkt. 1 at 11–12. The Officers argue that they're entitled to qualified immunity on that claim because "an arrestee's Fourth Amendment right to medical care . . . was not a clearly established right on October 28, 2019." Dkt. 56 at 4.[1] Ms. Chanley responds that Seventh Circuit precedent shows that the right was clearly established. Dkt. 78 at 6–10.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To defeat a qualified-immunity defense, a plaintiff must show two elements: (1) the violation of a constitutional right, and (2) that "the constitutional right was clearly established at the time of the alleged violation." *Id.* The second element ordinarily requires a plaintiff "to show some settled authority" that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 702. In other

---

[1] The parties do not agree what other Fourth Amendment claims are alleged in Count 1, but the Officers have moved for judgment on the pleadings on only the medical-care claim. *See* dkt. 1 at 11–12; dkt. 86 at 1.

words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

To meet that burden, Ms. Chanley relies primarily on *Estate of Perry v. Wenzel*, 872 F.3d 439 (7th Cir. 2017). There, officers provided no medical care to a pretrial arrestee who suffered a seizure, soiled himself, and complained that he was in pain and could not breathe. *Id.* at 455–56. The Seventh Circuit held that qualified immunity did not entitle the officers to summary judgment because "by 2010 . . . the failure to take *any* action in light of a serious medical need [of a pretrial arrestee] would violate" the Fourth Amendment. *Id.* at 460 ("A right is 'clearly established' if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").[2]

Ms. Chanley's complaint pleads facts that invoke that right. She alleges that after Mr. Chanley was shot and fell, he was bleeding and "motionless throughout the ordeal." Dkt. 1 at 6. She also alleges that the Officers "saw him close his eyes and then stop breathing," and that he "did not move or respond" when Officers yelled at him. *Id.* Yet the Officers provided no medical care and did not allow emergency medical personnel who were on the scene to provide medical aid to Mr. Chanley for about twenty minutes. *Id.* at 6–7. In

---

[2] Inexplicably, the Officers do not discuss or even cite *Estate of Perry*—a precedential opinion—in their initial brief, instead arguing that in an unpublished case, *Royal v. Norris*, 776 F. App'x 354, 355 (7th Cir. 2019), "the Seventh Circuit held that the right to medical care was *not* clearly established." Dkt. 56 at 4. But *Royal* explicitly recognized "an arrestee's Fourth Amendment right to medical care." 776 F. App'x at 358 (citing *Estate of Perry*, 872 F.3d at 460). Moreover, *Royal* distinguished *Estate of Perry*, explaining that the officers—unlike the officers in *Estate of Perry* who "fail[ed] to take any action"—took multiple steps to determine if the defendant had a serious medical need and "asked paramedics to independently evaluate him." *Id.*

5

sum, the complaint alleges that Mr. Chanley had a serious medical need that was obvious to the Officers and the Officers did nothing to help him. That is enough—at the pleadings stage—to bring this case within the Fourth Amendment right that *Estate of Perry* found to be clearly established. *See* 872 F.3d at 460.

Nevertheless, the Officers argue in reply that Ms. Chanley paints with too broad a brush by relying on the general right recognized in *Estate of Perry*. Dkt. 86 at 3. This argument fails for two reasons. First, *Estate of Perry* itself rejected the argument that a plaintiff must identify a "case with the exact same fact pattern." 872 F.3d at 460. It was enough that Seventh Circuit precedent established that it violated the Fourth Amendment to take no action in the face of a serious medical need. *Id.* The same is true here, at least at this stage.

Second, the Officers' opening brief made only the general argument that there was no clearly established Fourth Amendment obligation to provide medical care. Dkt. 56 at 3–5. Only after Ms. Chanley rebutted that argument with *Estate of Perry* did they argue that it was reasonable to delay medical care based on specific facts—that Mr. Chanley was unrestrained and had one hand beneath him. Dkt. 86 at 4–5. Notwithstanding waiver, it's not clear at this stage that those facts take this case outside of *Estate of Perry* since he was motionless and required medical care for gunshot wounds. Moreover, the complaint alleges that Officers still provided no medical care after they saw that Mr. Chanley was unresponsive and had stopped breathing. *See* dkt. 1 at 6.

The Officers are therefore not entitled to judgment on the pleadings on Count 1's medical-care claim based on qualified immunity. *See Roldan v. Stroud*, 52 F.4th 335, 337 (7th Cir. 2022) ("Rarely do we see qualified immunity awarded at the pleading stage. The reason is because determinations of qualified immunity most often depend on facts a plaintiff is not required to plead at the outset of litigation to avoid dismissal.").

### B. *Monell* Claims against the City of Evansville

Municipalities cannot be liable under 42 U.S.C. § 1983 "for the misdeeds of employees." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). Instead, the "critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation." *Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 829 (7th Cir. 2022) (explaining liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). *Monell* liability applies "only if those violations were brought about by (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority." *Id.*; *see City of Canton v. Harris*, 489 U.S. 378 (1989) (allowing failure-to-train *Monell* claims).

In Counts 2 and 3, the complaint alleges *Monell* claims based on policies—or the lack of policies—that fail to restrain excessive force and failure to train. Dkt. 1 at 13–16.[3] The City argues that these counts fail to state a claim because the complaint relies on "bare assertions and legal conclusions"

---

[3] The parties refer to the failure-to-train claim as a "Canton claim," after *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court case addressing *Monell* claims based on inadequate training.

7

instead of asserting facts that could plausibly state a *Monell* claim.  Dkt. 56 at 5–13.  Ms. Chanley responds that her allegations, while broad, allege a "lack of specific policies and training . . . and establish a direct causal connection between the policy or practice and [Mr. Chanley's] injuries and death."  Dkt. 78 at 11–16.

In the complaint, Ms. Chanley broadly alleges, for example, that Evansville:

- had "written policies and training . . . [that] were the moving force behind and caused [Mr. Chanley's] injuries";
- knew of its police department's "unconstitutional patterns and practices and . . . that the same gave rise to a risk of violations of citizens' federal rights," yet "made a deliberate and/or conscious decision to disregard the known risk of harm that would result";
- "made a deliberate and/or conscious decision to disregard the known risk of harm that would result from [its] unconstitutional patterns and practices";
- "failed to provide adequate training to its officers on the use of force, resulting in the personal injury to and death of" Mr. Chanley; and
- "was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training."

Dkt. 1 at 13–16.

"[F]ederal courts may not apply a heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016).  In *White*, the Seventh Circuit found that the district court erred in dismissing a claim that "was based upon the sole allegation that [the officer] acted in accordance with a

8

widespread practice of the police department of the City of Chicago when seeking a warrant." *Id.* at 843. More recently, the Seventh Circuit explained that a *Monell* claim should proceed even on the sole allegation that the municipality had an unconstitutional practice "so widespread and well-settled that it constitutes a custom or usage with the force of law." *Regains v. City of Chicago*, 918 F.3d 529, 535 (7th Cir. 2019). Here, Ms. Chanley has alleged at least that much, so she has stated *Monell* claims. *See White*, 829 F.3d at 844.

Nevertheless, Evansville insists that Ms. Chanley's allegations are too conclusory, relying on *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) and assorted district-court opinions. *See* dkt. 56 at 5–11. But the claim in *McCauley* failed for a different reason—the policy that the complaint alleged there was not unconstitutional. 671 F.3d at 619 ("McCauley's factual allegations are entirely consistent with lawful conduct."). Here, by contrast, Ms. Chanley alleges failure to restrain excessive force and failure to train. Dkt. 1 at 13–16. And Evansville's cited district court cases are primarily from other districts, are not binding here, and regardless are not unanimous. *See Snukis v. Taylor*, No. 3:21-cv-135-TWP-MPB, 2022 WL 2305697 (S.D. Ind. June 27, 2022) (holding, under *White v. City of Chicago*, that virtually identical allegations stated *Monell* claims against Evansville).

None of this is to say how "this case will look after all parties have had the chance to develop the factual record," but the "allegations are enough to survive" the motion for judgment on the pleadings. *Flores*, 997 F.3d at 734.

### C. Unopposed Dismissals

Defendants argue that they are entitled to judgment on the pleadings on (1) all state-law claims against the Officers in their individual capacities, (2) the state-law claims in Counts 5 and 6[4] in their entirety, and (3) the prayer for equitable relief. Dkt. 56 at 12–15. Ms. Chanley does not oppose those requests. Dkt. 78 at 16–17; dkt. 86 at 16–17. Count 5 (negligence in supervising and retaining) and Count 6 (negligence in training) are therefore **DISMISSED**. Count 4 (negligence) and Count 8 (wrongful death) are **DISMISSED against the Officers in their individual capacities**. The prayer for equitable relief is **DISMISSED**.

### IV.
### Conclusion

Defendants' motion for judgment on the pleadings is **GRANTED in part and DENIED in part**. Dkt. [55]. Counts 5 and 6 and the prayer for equitable relief are dismissed and Counts 4 and 8 are dismissed against the Officers in their individual capacities. The motion is otherwise denied.

The assigned Magistrate Judge is asked to hold a status conference to clarify the remaining claims[5] and to address settlement and the remaining case deadlines.

---

[4] The heading for this section of Defendants' brief refers to Counts 8 and 9, but the argument and reply brief refer to and analyze Counts 4 and 5. Dkt. 56 at 14; dkt. 86 at 9–10.

[5] Ms. Chanley mentions in a footnote that Count 1 includes Fourth Amendment failure to intervene and failure to supervise claims, dkt. 78 at 6 n.1, but Defendants briefly respond that the complaint was insufficient to provide notice of those claims, dkt. 86 at 1.

10

**SO ORDERED.**

Date: 3/30/2023

                                              James Patrick Hanlon
                                              United States District Judge
                                              Southern District of Indiana

Distribution:

All electronically registered counsel